UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL MICHAEL NEILL,<br><br>                        Plaintiff,<br><br>v.<br><br>YMCA OF SAN DIEGO,<br><br>                        Defendant. | Case No.: 23-CV-457 JLS (DEB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>(ECF No. 27) |

      Presently before the Court are Defendant YMCA of San Diego's Motion to Dismiss Plaintiff's Second Amended Complaint ("Mot.," ECF No. 27); Memorandum of Points and Authorities ("Mem.," ECF No. 27-1); and Request for Judicial Notice ("RJN," ECF No. 27-3). Plaintiff Angel Michael Neill submitted an Opposition to the Motion ("Opp'n," ECF No. 32), to which Defendant replied ("Reply," ECF No. 33). The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). ECF No. 31. Having carefully reviewed Plaintiff's Second Amended Complaint ("SAC," ECF No. 24), the Parties' arguments, and the law, the Court **GRANTS** Defendant's Motion.

## BACKGROUND

      The Court provided a thorough recitation of this action's factual and procedural background in the November 13, 2023, Order Granting Defendant's Motion to Dismiss

Plaintiff's First Amended Complaint (the "Order," ECF No. 22). The Court repeats the relevant facts below, for ease of reference, with the addition of more recent developments.

## I. Plaintiff's Initial Complaint

Plaintiff, proceeding *pro se*, initiated this action on March 14, 2023, by filing a Complaint utilizing this District's Form Complaint ("Compl.," ECF No. 1). Liberally construed, the Complaint appeared to raise one or more claims for employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and California's Fair Employment and Housing Act ("FEHA"). *See generally* Compl. Specifically, the Complaint alleged Plaintiff had suffered discrimination on the basis of his "gender, race, and medical disability" while he was employed by Defendant. *Id.* at 3.[1] The Complaint also alleged that Plaintiff had been sexually assaulted by a coworker, Tyler Lamar. *See id.* at 2. The relief Plaintiff sought included (1) the recission of a settlement agreement he entered into with Defendant, (2) an investigation into the alleged discrimination, and (3) an investigation into the alleged sexual assault. *Id.*

Plaintiff attached over 100 pages of exhibits to the Complaint. *See* ECF Nos. 1-3, 4. Among other documents, the exhibits included a "Notice of Right to Sue" issued by the U.S. Equal Employment Opportunity Commission ("EEOC"), ECF No. 1-3 at 1; Plaintiff's "Confidential Mediation Brief" submitted to California's Civil Rights Department ("CRD"),[2] *id.* at 10; pages of what appeared to be a narrative written by Plaintiff, *see id.* at 49–72; and various records pertaining to Plaintiff's former employment with Defendant, *see generally* ECF No. 4.

/ / /

/ / /

---

[1] Pin citations to docketed material in this Order refer to the CM/ECF page numbers electronically stamped at the top of each page.

[2] The CRD was previously known as the California Department of Fair Employment and Housing, or "DFEH." *See, e.g.*, *Frohm v. City & Cnty. of San Francisco*, No. 22-CV-06002-JST, 2023 WL 4828685, at *3 (N.D. Cal. July 27, 2023).

## II. Plaintiff's First Amended Complaint and Defendant's First Motion to Dismiss

Plaintiff then filed his First Amended Complaint ("FAC," ECF No. 6) on March 27, 2023. The FAC's allegations were narrower than those in the Complaint. The FAC did not reference any of the discrimination claims discussed in the Complaint, but instead focused solely on Plaintiff's sexual assault allegation. However, many of the exhibits Plaintiff provided with the FAC pertained to allegations included in the Complaint but omitted from the FAC. *See* ECF No. 8.

On July 19, 2023, Defendant moved for dismissal of the FAC, arguing, *inter alia*, that (1) Plaintiff had failed to exhaust his administrative remedies as required under both Title VII and FEHA, and (2) the FAC failed to state any claim upon which relief could be granted. *See generally* ECF No. 13 ("First MTD"). The Court agreed on both counts. First, the Court explained that Plaintiff had failed to sufficiently plead exhaustion because the administrative charge he had filed with the CRD did not include—and was not related to—any of the sexual assault allegations raised in the FAC. *See* Order at 11–12. The Court further found that the FAC failed to comply with Federal Rule of Civil Procedure 8's "short and plain statement" requirement. Not only was the FAC difficult to decipher, but Plaintiff had also failed to identify the theories of liability he sought to employ and the type of relief he hoped to recover. *See id.* at 16–17.

Given its deficiencies, the Court dismissed the FAC in its entirety without prejudice and with leave to amend. *See id.* at 17. Plaintiff was given forty-five days to file a second amended complaint, though he was cautioned that any such filing needed to be complete in itself without reference to the FAC. *See id.*

## III. Plaintiff's Second Amended Complaint

After receiving an extension, *see* ECF No. 31, Plaintiff filed the SAC on December 26, 2023. The document, consisting of sixty-nine pages, is seventeen times longer than the FAC and contains the following allegations.

After attending a YMCA lifeguard training on June 9, 2019, Plaintiff went to an art gallery in San Diego with Lamar, Head Lifeguards Amy Blankenmeier and Ashley Lucas,

3

and Lifeguard Esteban Susa. SAC at 3. On the way, Lamar made some suggestive comments and informed his colleagues that he was bisexual. *See id.* at 3–4. Those hearing Lamar's comments were "shocked" but did not speak up due to Lamar's position of authority at the YMCA. *See id.*

Later at the art gallery, Lamar approached Plaintiff and started asking questions about Plaintiff's work at the YMCA. *Id.* at 4. Lamar leaned in close to Plaintiff as if to kiss him, causing Plaintiff to feel uncomfortable and move away. *Id.* Lamar then placed his hand on Plaintiff's thigh and began to rub Plaintiff's groin. *Id.* Before Lamar left, he said: "If you ever need anything you can come to me." *Id.* (emphasis omitted). Plaintiff responded by telling Lamar that his behavior constituted sexual assault. *Id.* Lamar then sighed and walked away quickly. *Id.*

Plaintiff reported Lamar's conduct to several individuals. The night of the assault, Plaintiff confided in Blankemeier. *Id.* Next, Plaintiff went to Aquatics Director Janelle De Santi, who reportedly told Plaintiff that he needed to try to work the conflict out with Lamar on his own before he could go to human resources ("HR"). *Id.* at 5. The SAC also alleges De Santi told Plaintiff to report the assault to Eric Snyder, who worked in HR. *See id.* After unsuccessfully attempting to contact Snyder, Plaintiff reached out to Baron Herdelin-Doherty, Defendant's president and chief executive officer. *Id.* Over the phone, Herdelin-Doherty promised to put Plaintiff in touch with "the right people." *Id.*

Responding to Plaintiff's outreach, Senior Vice President and Chief HR Officer Stephanie Alexander contacted Plaintiff and organized a meeting with Snyder. *See id.* at 6. At their request, Plaintiff provided Alexander and Snyder with the details of the alleged assault. *See id.* After the meeting, Lamar was absent from work for a time. *See id.*

After reporting the assault, Plaintiff began noticing changes at work. First, his schedule was changed; De Santi assigned him shifts on nights and weekends, though he had asked to work during the day. *See id.* at 7. Later, Plaintiff was passed over for promotions that he was qualified to receive. *See id.* at 6–7. Additionally, Head Lifeguards William Holifield and John Martinez, both of whom were friends of Lamar, began to

"torment," "harass," and "intimidate" Plaintiff with "constant pool audits" during the summer of 2019. *Id.* at 7. Holifield and Martinez—who treated Plaintiff kindly before the assault accusation—purportedly told Plaintiff he was "not good enough to be a lifeguard" and made "inappropriate jokes about [his] weight[,] gender[,] and masculinity." *Id.*

In August of 2019, Lamar returned to work at the YMCA and behaved antagonistically toward Plaintiff. *See id.* at 8–9. Lamar allegedly belittled Plaintiff in front of other employees, forced Plaintiff to take on additional tasks, and began auditing Plaintiff's work. *See id.* Lamar held Plaintiff to an "unrealistic[ally]" high standard at work and would yell at Plaintiff in front of coworkers when Plaintiff fell short. *See id.*

In the fall of 2020, Plaintiff sat for a performance review conducted by Snyder and Executive Director Blaze Zarev. *See id.* at 9. Plaintiff was asked why he had not "tried to promote himself" within the YMCA workforce. *Id.* Plaintiff responded by bringing up the alleged sexual assault. *Id.* Zarev seems to have then fired Plaintiff after stating that Plaintiff did not meet the YMCA's professionalism standards. *See id.* at 9–10.

The allegations described above come from the first ten pages of the SAC. Thereafter, the SAC spends approximately thirty pages explaining how those allegations represent violations of Defendant's Personnel Policy Manual. *See id.* at 10–38. The remainder of the SAC consists of exhibits, some of which have no obvious connection to the case.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court applies its "judicial experience and common sense." *Id.* (citation omitted). "[A] district court must accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019) (citing *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). Where a complaint does not survive 12(b)(6) review, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . could cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Defendant seeks the SAC's dismissal on two grounds that were also raised in the First Motion to Dismiss: (1) Plaintiff has failed to adequately plead exhaustion of his administrative remedies, and (2) the SAC does not comply with Federal Rules of Civil

Procedure 8 and 10. The Court addresses each argument in turn.

## I. Title VII and FEHA Claims

First, Defendant argues that any Title VII or FEHA claims the SAC may attempt to state should be dismissed because Plaintiff has failed to plead exhaustion of his administrative remedies. *See* Mem. at 9–14. Neither the SAC nor Plaintiff's Opposition acknowledge this issue.

### A. Legal Framework

Generally, a plaintiff is required to exhaust his administrative remedies before suing under Title VII or FEHA. *See Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 905 (N.D. Cal. 2013). To properly exhaust one's claims, a claimant must timely file a charge with the appropriate agency (here, the EEOC or the CRD),[3] allow the agency to investigate, and receive a right-to-sue notice. *See id.* at 905–06. Title VII and FEHA call for the same exhaustion analysis, meaning "a plaintiff who exhausts his administrative remedies under Title VII also exhausts his remedies under the FEHA." *Freeman v. Cnty. of Sacramento Dep't of Hum. Assistance*, No. 2:19-CV-02418-KJM-CKD PS, 2020 WL 2539268, at *2 (E.D. Cal. May 19, 2020).

Not only must a plaintiff exhaust her claims to bring suit, but she must also *plead* exhaustion. Specifically, plaintiffs need to plead "substantial compliance" with administrative exhaustion requirements to state Title VII or FEHA claims.[4] *See Williams v. Wolf*, No. 19-CV-00652-JCS, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019). To satisfy this requirement, "the allegations of a plaintiff's judicial complaint must be 'like or

---

[3] Under the work-sharing agreement between the EEOC and the CRD, an administrative charge filed with one agency is deemed to have been constructively filed with the other. *See, e.g.*, *Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1244 (9th Cir. 2010).

[4] Title VII's exhaustion requirement is a "mandatory claim-processing rule," *Fort Bend Cnty v. Davis*, 139 S. Ct. 1843, 1851 (2019), whereas FEHA treats the issue as jurisdictional, *see Johnson v. City of Loma Linda*, 5 P.3d 874, 879 (Cal. 2000). The result under either statute is, however, the same for present purposes: "[P]laintiff must allege compliance with the exhaustion requirement in order to state a claim on which relief may be granted." *Freeman*, 2020 WL 2539268, at *2.

reasonably related to the allegations' in [their] administrative [charge].'" *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1302 (N.D. Cal. 2020) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)). Allegations are sufficiently related where "they would fall within 'the scope of an EEOC investigation which [could] reasonably be expected to grow out of the [administrative] charge.'" *Id.* (alterations in original) (quoting *Sosa*, 920 F.2d at 1456).

Courts evaluating the similarities between judicial complaints and administrative charges consider several factors, including "the alleged basis of the discrimination, dates of discriminatory acts specified within the [administrative] charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (citation omitted). Courts also consider the extent to which the "plaintiff's civil claims . . . are consistent with [her] original theory of the case" as laid out in the administrative charge. *Id.*

During this analysis, courts construe administrative charges "with utmost liberality." *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *B.K.B.*, 276 F.3d at 1100). That said, an administrative charge that "merely mention[s] the word 'discrimination'" will generally not suffice. *Id.* at 637. Rather, the claims reported in an administrative charge—and thus exhausted for the purposes of this analysis—are defined by "the factual allegations made in the charge itself" (*i.e.*, those "describing the discriminatory conduct about which a plaintiff is grieving"). *Id.*

When conducting this inquiry, "the Court may look beyond the face of the [SAC] to public records concerning Plaintiff's [administrative] complaints."[5] *Mattioda v. Bridenstine*, No. 20-CV-03662-SVK, 2021 WL 75665, at *5 (N.D. Cal. Jan. 8, 2021). In so doing, the Court takes notice only of the existence of those records and does not accept as true any disputed facts therein.

---

[5] Defendant's request for judicial notice of Plaintiff's administrative charge is thus granted.

### B. Plaintiff's CRD Charge

To support its failure-to-exhaust argument, Defendant points to an Amended Complaint of Discrimination ("CRD Charge") Plaintiff filed against Defendant on June 27, 2022. *See* Snyder Decl. Supp. Mot. ("Snyder Decl.") at 6–11, ECF No. 27-2. Defendant contends that the CRD Charge contains almost none of the allegations Plaintiff makes in the SAC. *See* Mem. at 10–13.

Per the CRD Charge, De Santi "subjected [Plaintiff] to different terms and conditions of employment due to [his] color, national original (Mexican), sexual orientation (heterosexual)," "gender identity (cisgender male)," and disability. Snyder Decl. at 7. Plaintiff alleges De Santi gave him "fewer work hours" and "less favorable work shifts" after he "suffered a job-related injury" on September 28, 2019. *Id.* When he complained to her about this "employment discrimination," she "subjected [him] to retaliation" and scrutinized his work more closely. *Id.* During his two-year recovery from the injury, Plaintiff contends he was denied positions that would have "better accommodate[d] [his] disability" and that he "was fully qualified for." *Id.* Finally, on May 28, 2021, Plaintiff states he was discharged by HR professionals Cathy Gonzalez and Osmar Abad. *Id.* Plaintiff was told that he was fired for "sleeping in the pool," but he maintains in the CRD Charge that his termination was the result of discrimination. *See id.*

### C. Discussion

Considering the *B.K.B.* factors and construing Plaintiff's filings liberally, the Court finds that the SAC fails to plead substantial compliance with the exhaustion requirements of Title VII and FEHA.

The SAC's sexual assault allegations are not reasonably related to the allegations in the CRD Charge. The Charge does not (1) mention the assault; (2) name Lamar, Holifield, or Martinez; (3) discuss the post-assault bullying Plaintiff experienced at their hands; nor (4) touch on how individuals listed in the SAC (such as Snyder) handled—or failed to handle—his allegations against Lamar. In short, nothing in the CRD Charge suggests the CRD or the EEOC would have investigated the SAC's principal allegations. Plaintiff has

thus failed to plead exhaustion with respect to any Title VII or FEHA claims arising out of the alleged sexual assault. *See Freeman*, 291 F.3d at 637 (finding plaintiff failed to exhaust where charge alleged discrimination regarding "specific election" at work, but the complaint did not refer to said election).

The only factual allegations addressed in both the CRD Charge and the SAC relate to a potential retaliation claim, including the allegation that Plaintiff had his schedule reduced and work scrutinized by De Santi. *See* Snyder Decl. at 7; SAC at 7. But the CRD Charge and the SAC use these allegations to support distinct theories of retaliation. In his CRD Charge, Plaintiff alleges De Santi retaliated against Plaintiff for complaining of "employment discrimination" after his "job-related injury" resulted in his "hours [being] reduced." Snyder Decl. at 7. Meanwhile, the SAC indicates De Santi's actions came "after [Plaintiff] reported this [s]exual assault by Tyler Lamar." SAC at 7. The inconsistency between these theories prevents the Court from finding that Plaintiff exhausted his administrative remedies as to the retaliation allegations in the SAC.[6]

Accordingly, the Court **GRANTS** Defendant's Motion as to any Title VII and FEHA claims Plaintiff sought to bring in the SAC.

## II. Federal Rule of Civil Procedure 41

Defendant also argues the SAC should be dismissed pursuant to Federal Rule of Civil Procedure 41(b), which allows a defendant to move for dismissal if "the plaintiff fails . . . to comply with [the Federal Rules of Civil Procedure]." Fed. R. Civ. P. 41(b). Defendant contends that the SAC does not conform to the requirements of Federal Rules of Civil Procedure 8 and 10. *See* Mem. at 8. At least as to Rule 8, the Court agrees.

---

[6] *See Franklin v. City of Kingsburg*, No. 1:18-CV-0824 AWI SKO, 2019 WL 3004016, at *5 (E.D. Cal. July 10, 2019) ("Plaintiff's employment discrimination claims are limited to theories of retaliation covered by [his] EEOC Charge . . . ."); *Verduzco v. Conagra Foods Packaged Foods, LLC*, No. 1:18-CV-01681-DAD-SKO, 2021 WL 2322522, at *8 (E.D. Cal. June 7, 2021) (noting courts have found failures to exhaust "where the administrative charge alleged retaliation based on certain protected activity (*e.g.*, complaining of race discrimination) and the complaint . . . alleges retaliation based on completely different protected activity (*e.g.*, complaining of gender discrimination)").

### A. Federal Rule of Civil Procedure 8

#### 1. Legal Standard

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The Supreme Court has interpreted [this] requirement to mean that the complaint must provide 'the defendant [with] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011) (second and third alterations in original) (quoting *Twombly*, 550 U.S. at 555). A claim, in turn, "is the 'aggregate of operative facts which give rise to a right enforceable in the courts.'" *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000) (quoting *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.*, 133 F.2d 187, 189 (2d Cir. 1943)).

A complaint falls short under Rule 8 if "one cannot determine from [it] who is being sued, for what relief, and on what theory." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). Though Rule 8 does not provide grounds to dismiss an excessively-long-but-otherwise-well-organized-and-coherent complaint, it does support the dismissal of labyrinthine and incomprehensible pleadings. *See Gottschalk v. City & Cnty. of San Francisco*, 964 F. Supp. 2d 1147, 1154 (N.D. Cal. 2013); *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (finding dismissal appropriate where a complaint is "so 'verbose, confused and redundant that its true substance, if any, is well disguised'" (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969))).

#### 2. Discussion

Defendant argues the SAC—like the FAC before it—fails to comply with Rule 8 because it "does not [1] list any causes of action, [2] identify theories of liability, or [3] seek any particular relief." Mem. at 15. On Defendant's first point, the Court need not decide whether the SAC sufficiently identifies Title VII or FEHA causes of action;[7] as Plaintiff

---

[7] Notably, this question is closer than Defendant admits. Indeed, the allegations and stray legal citations in the SAC at least *suggest* that Plaintiff intends to rely on Title VII and FEHA. Still, the SAC does not address specific claims (*e.g.* hostile environment). And while Plaintiff's Opposition provides more clarity

did not adequately plead exhaustion, the SAC fails to state claims under either statute regardless. *See supra* Section I. As to the rest of its Rule 8 argument, Defendant prevails.

As an initial matter, the Court notes that the SAC represents an improvement over the FAC in terms of Rule 8 compliance, at least in some respects. For example, the SAC includes more detailed factual allegations than the relatively sparse FAC. On the other hand, though, the SAC—which consists of sixty-nine pages—is rife with repetitive allegations and contains several exhibits that have no obvious connection to the case. So, while the SAC provides greater insight into the scope of Plaintiff's allegations, it remains difficult to understand exactly how some of his allegations relate to each other.

Any improvements aside, the Court concludes the SAC—to the extent it contemplates non-FEHA or non-Title VII claims—falls short of Rule 8's requirements. Despite its length, the SAC does not hint at what other causes of action Plaintiff might assert. Nor can Plaintiff rely on Defendant or this Court to match the SAC's factual allegations to an unknown list of claims that those facts might support. *Cf. Byrd v. Cal. Super. Ct.*, No. C 08-04387MHP, 2009 WL 2031761, at *11 (N.D. Cal. July 8, 2009) ("[P]laintiff lumps together all of her constitutional claims without the necessary facts to support each of them, leaving it to the court . . . to match facts to claims. This the court will not do."). And setting causes of action aside, the SAC also runs afoul of Rule 8 by neglecting to indicate the type of relief Plaintiff seeks. *See McHenry*, 84 F.3d at 1178.

Accordingly, the Court **GRANTS** Defendant's Motion and **DISMISSES** the SAC for failure to comply with Rule 8(a)(2) to the extent it raises non-Title VII or non-FEHA claims. *See, e.g.*, *Liljegren v. U.S. Air Force*, No. 2:21-CV-03105-MCS-MAR, 2022 WL 18214394, at *2 (C.D. Cal. July 22, 2022) ("Plaintiff once again does not identify any causes of action in his response. This alone presents a ground upon which the

---

by discussing, *inter alia*, quid pro quo harassment and retaliation, the Court cannot "consider factual allegations and legal bases asserted for the first time in Plaintiff's Opposition" in "deciding whether the [SAC] satisfies Rule 8." *Martin v. Johnson*, No. 2:20-CV-11342-FWS-SHK, 2022 WL 20273644, at *5 (C.D. Cal. Nov. 15, 2022).

12

23-CV-457 JLS (DEB)

complaint may be dismissed.").

## B. Federal Rule of Civil Procedure 10

Defendant also argues the SAC does not conform to Rule 10(b), under which "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The Court previously declined to dismiss the FAC on this ground, noting that the lack of numbered paragraphs contributed little to the FAC's defects. *See* Order at 16. Plaintiff's noncompliance with Rule 10(b) is more apparent in the SAC, which features longer paragraphs that do not connect to specific claims. Still, given the Court's rulings regarding exhaustion and Rule 8, the Court need not decide whether Rule 10(b) presents an additional basis for dismissing the SAC. The Court does, however, instruct Plaintiff to comply with Rule 10(b) going forward.

## III. Leave to Amend

Generally, "leave to amend should be freely granted 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). Courts must apply that policy "with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). When contemplating the propriety of granting leave to amend, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

Here, Defendant asks the Court to withhold leave to amend because Plaintiff "has already been given an opportunity to amend his complaint." Mem. at 18. And indeed, Plaintiff's failure to address the deficiencies noted in the Court's prior Order weighs against granting leave. As touched on above, however, the SAC represents an improvement over the FAC in some ways. For example, the SAC cites to some statutes, like Title VII and FEHA, suggesting Plaintiff—though perhaps ultimately unsuccessful—made some effort to identify specific causes of action. And while the Court is mindful of Defendant's

concerns, the remaining relevant factors do not, in the Court's view, justify dismissal without leave to amend at this time. The Court will thus grant Plaintiff one more opportunity to amend.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 27) and **DISMISSES** the SAC (ECF No. 24) **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.

<u>Within thirty (30) days</u> of the date of the Order, Plaintiff either **(1) SHALL FILE** a third amended complaint ("TAC"), **or (2) SHALL INDICATE** to the Court that he will not do so. ***Failure to timely select one of these options may result in the dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure 41(b)***. *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890–91 (9th Cir. 2019) (explaining courts may dismiss an action under Rule 41(b) when a plaintiff fails to comply with a court order requiring the filing of an amended complaint).

*If Plaintiff chooses to file a TAC*, the TAC must comply with Federal Rule of Civil Procedure 8(a) and contain a "short and plain" statement of Plaintiff's claim(s) and the facts showing that he is entitled to relief. Along those lines, Plaintiff shall (1) identify the legal and factual basis for each cause of action he pursues, and (2) specify the relief he seeks. If Plaintiff wishes to raise Title VII and/or FEHA claims, he must also plead substantial compliance with the administrative exhaustion requirements discussed, *supra*, in Section I. Additionally, any TAC shall comply with Federal Rule of Civil Procedure 10(b) as detailed, *supra*, in Section II.B. Finally, Plaintiff is reminded that any TAC must be complete in itself without reference to Plaintiff's original Complaint, FAC, or SAC, *see* S.D. Cal. CivLR 15.1; and that any claim not re-alleged in Plaintiff's TAC will be considered waived, *see Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012)

/ / /

/ / /

/ / /

23-CV-457 JLS (DEB)

1  (noting that claims dismissed with leave to amend that are not realleged in an amended
2  pleading may be considered waived).

3  **IT IS SO ORDERED.**

4  Dated: April 29, 2024

Hon. Janis L. Sammartino
United States District Judge